No. 85-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

WILLIAM F. RAUCH, JR., individually
and as a partner of Sierra Meadows
and West Fork Ranch,

        Plaintiff and Respondent,

  -vs-

VIOLET MICHEL,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Charles Graveley, Helena, Montana

    For Respondent:

        Hughes, Kellner, Sullivan & Alke; John F. Sullivan,
Helena, Montana

---

Submitted on Briefs:  Dec. 30, 1985

Decided:  April 9, 1986

Filed:  APR 9 - 1986

_Ethel M. Harrison_
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Violet Michel appeals from an order of the Lewis and Clark County District Court entering judgment against her in the amount of $14,297.15. We affirm.

The issues presented for review are:

1. Was the District Court in error in finding that Mr. Rauch, the plaintiff, was not in default on the promissory note?

2. Was it proper for the District Court to award punitive damages to Mr. Rauch?

3. Was the award of attorney fees to Mr. Rauch proper?

This matter was tried before the District Court, sitting without a jury. The uncontroverted facts as found by the court are set out below.

In March 1982, Mr. Rauch, as a partner in Sierra Meadows and West Fork Ranch, purchased land which had formerly been owned by defendant's son, Mr. Maykuth. A granary owned by Mr. Maykuth had been left on the land. Mr. Maykuth was informed that the granary should be removed.

The next month, Mr. Rauch agreed to purchase a sprinkler system from defendant for $9,000. He made a $1,000 down payment on the sprinkler and agreed to pay the $8,000 balance at 15 percent interest. The sprinkler system was delivered to Mr. Rauch during the latter part of April and first part of May. Later, Mr. Rauch signed a promissory note for the $8,000 balance due on the sprinkler. Mr. Rauch was to receive a bill of sale and clear title to the sprinkler upon payment of the note.

In mid-September, Mr. Rauch had not yet paid off the note. He told defendant that he would borrow enough money to pay off the entire balance due. He also offered to pay

2

$1,000 for the granary, as an alternative to its removal from the property.

On October 6, Mr. Rauch wrote a check to defendant for the total amount due on the sprinkler. The next day he called defendant and informed her of the check, which she told him to mail to her. During that conversation, defendant informed Mr. Rauch that her son, Mr. Maykuth, considered the offer to buy the granary for $1,000 to be an insult. Mr. Rauch responded that he did not really want the granary, and asked again that Mr. Makuth arrange to move it.

On October 11, defendant had not yet received the check. Mr. Maykuth, acting as defendant's agent, entered Mr. Rauch's property and took the sprinkler. At least part of his motivation was to pressure Mr. Rauch into purchasing the granary. In the process of removing the sprinkler, he damaged the door to a storage shed.

Defendant received Mr. Rauch's check the next day. She made no effort to inform Mr. Rauch that Mr. Maykuth had taken the sprinkler. In addition, she did not offer to return the sprinkler, or the money which had been paid for it.

Mr. Rauch reported to the sheriff's office that the sprinkler had been stolen. About a week later, Mr. Maykuth called the Rauch phone number and told Mrs. Rauch that he had taken the sprinkler and that he would return it if Mr. Rauch agreed to purchase the granary for an appropriate price.

Mr. Rauch then demanded the sprinkler's return. It was not returned. Mr. Rauch's attorney told defendant that Mr. Maykuth was no longer welcome on the Rauch property. Mr. Maykuth was made aware of this. Nevertheless, he entered Mr. Rauch's property without permission in May 1983 to photograph the lock on Mr. Rauch's storage shed.

3

The District Court, among its other detailed findings and conclusions, found that defendant had waived strict enforcement of the promissory note by "failing repeatedly to demand payment of the note in accordance with its terms." The court also found that defendant, through her agent Mr. Maykuth, had interfered with Mr. Rauch's peaceable occupation of his home and property by entering the property to take the sprinkler and to photograph the lock on the storage shed. The District Court further awarded attorney fees to Mr. Rauch, finding that defendant's counter claim sounded in contract and that Mr. Rauch was the prevailing party.

I

Was the District Court in error in finding that Mr. Rauch, the plaintiff, was not in default on the promissory note?

The record shows that the parties originally agreed that Mr. Makuth would pay off the purchase price of the sprinkler system during 1982. In June, at Mr. Maykuth's request, Mr. Makuth signed a promissory note on the sprinkler. The note was backdated to May 1. It provided for monthly payments of $2,000 and interest at 15% per annum, but did not specify the dates on which payments were due. No payment was made or requested for the month of May. Mr. Maykuth requested a $2,000 payment on June 18, and payment was made a few days later. No payments were made or requested in July. A second $2,000 payment was requested on August 23 and received about a week later. On September 23, defendant requested a third $2,000 payment, plus $391.23 in interest. Mr. Rauch conveyed to defendant his intention to borrow money to pay off the entire amount due. On October 7, defendant told Mr. Rauch to mail the balance due to her, rather than deliver it personally. She received the check for the balance on October 12.

4

Defendant is in the peculiar position of arguing that Mr. Rauch was in default on the note, when the evidence establishes that she had agreed to accept the check she received on October 12 as the final payment. The Uniform Commercial Code provisions on commercial paper are applicable. Section 30-3-604, MCA, provides that "[a]ny party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs, and attorney's fees." The defendant agreed by phone to accept $4,391.23 as full payment of the note, and asked that payment be mailed rather than hand-delivered. Mr. Rauch sent her a check for the total amount agreed upon, $4,391.23.

The District Court found that Mr. Rauch was not in default. We conclude that the District Court may properly be affirmed on this issue.

II

Was it proper for the District Court to award punitive damages to Mr. Rauch?

Defendant argues that the award of punitive damages is improper because this is a contract action. Mr. Rauch's amended complaint requested punitive damages for the removal of the sprinkler from his property, which he characterized as a conversion. The District Court's conclusions state that it awarded $5,000 in punitive damages as a punishment for the "breach of defendant's obligation, not arising from the contract she broke, to allow the Plaintiff peaceable occupation of his home and property" and for "Defendant's refusal to return either the spray system or the money ($5,000) paid down on it," both of which the court found "oppressive and malicious."

5

Punitive damages are proper in an action for a breach of an obligation "not arising from contract where the defendant has been guilty of oppression, fraud, or malice." Section 27-1-221(1), MCA. The breach of defendant's obligation to allow Mr. Rauch "peaceable occupation of his home and property" does not arise from contract. This Court has approved the award of punitive damages in similar situations where there was malicious conduct. In Butcher v. Patranek (1979), 181 Mont. 358, 593 P.2d 743, this Court affirmed a jury award of $20,000 in punitive damages. Where the defendant had maliciously rammed a pickup truck into plaintiff's horse and driven a road grader across a section of plaintiff's wheat field. This Court also upheld the award of punitive damages in a case in which the defendant maliciously destroyed a gate and approach on plaintiff's property and intimidated plaintiff with threats of bodily harm. Toeckes v. Baker (1980), 188 Mont. 109, 611 P.2d 609.

The court found that part of Mr. Maykuth's motivation in entering the Rauch property and taking the sprinkler was to force Mr. Rauch to buy the granary. The defendant did not hold a security interest on the sprinkler under the Uniform Commercial Code. As a result, defendant had no right under the UCC to repossess the sprinkler, even if the payment obligation had been delinquent. The defendant as the holder of a promissory note was not entitled to repossess the sprinkler under any condition. Without right or justification, and only a few days after having been told that full payment was in the mail, the defendant's agent went upon the Rauch property and took the sprinkler, damaging the door of Mr. Rauch's storage shed. The District Court awarded Mr. Rauch $300 for damages to the door. Even though she had received the final payment, the defendant did not offer to return

6

either the sprinkler or the final payment. Additionally, when defendant's agent entered the Rauch property to photograph the shed lock, he was aware of the request that he stay off the property. It is true that the District Court did not specifically find that the taking of the sprinkler constituted a conversion. Apparently, that was based upon the contractual arrangement under which final title was not to be passed to the Mr. Makuth until full payment had been made. The record contains substantial evidence to support the conclusion of the District Court that the defendant's trespass upon Mr. Rauch's property was malicious.

We affirm the District Court's award of punitive damages.

## III

Was the award of attorney fees to Mr. Rauch proper?

The District Court awarded attorney fees to Mr. Rauch in the amount of $4,246.12, representing the proportion of total attorney fees allocable to the sprinkler system issue. Defendant contends that this award of attorney fees is not provided for by contract, by statute, or by case law.

The District Court's award of attorney fees is based on a provision in the promissory note for the sprinkler and on the reciprocity provision at § 28-3-704, MCA. The promissory note contained the language "[t]he makers and endorsers . . . agree to pay reasonable attorney's fees in case of default on this note." Section 28-3-704, MCA, provides that:

> [w]henever, by virtue of the provisions of any contract . . . one party to such contract . . . has an express right to recover attorney fees from any other party to the contract . . . in the event the party having that right shall bring an action upon the contract . . . then in any action on such contract . . . all parties to the contract . . . shall be deemed to have the same right to recover attorney fees and the prevailing party in

7

any such action, whether by virtue of the express contractual right or by virtue of this section, shall be entitled to recover his reasonable attorney fees from the losing party or parties.

The effect of § 28-3-704, MCA, is to give a reciprocal right to attorney fees to all parties to a contract which provides for attorney fees. Compton v. Alcorn (1976), 171 Mont. 230, 235, 557 P.2d 292, 296. Defendant's counterclaim was an action for damages for breach of the contract represented by the promissory note. The District Court found that this action was sufficiently within the realm of contract actions to qualify under § 28-3-704, MCA, and held that Mr. Rauch, as the prevailing party, was entitled to attorney fees on that portion of the action. We affirm the decision of the District Court.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8