No. 85-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

MICHAEL CAREY AND CHRISTINE
CAREY,

Plaintiffs and Appellants,

-vs-

ORVILLE WALLNER and GRACE WALLNER,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Lyman H. Bennett, III; (Terry Schaplow moved for
temporary admission of Edward L. Kelly for oral
argument) Morrow, Sedivy & Bennett, Bozeman, Montana

For Respondents:

Michael J. Lilly argued; Scully, Lilly & Andriolo,
Bozeman, Montana

---

Submitted: July 8, 1986

Decided: September 18, 1986

Filed: SEP 18 1986

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the findings of fact, conclusions of law, order and judgment of the District Court in and for the Eighteenth Judicial District, Bozeman, Montana. Following a bench trial, the court found the petitioners were entitled to rescind a contract for deed they had entered into with the defendants and were entitled to certain damages including attorney's fees. Petitioners cross-appeal part of the damage award. We affirm rescission of the contract and reverse and remand as to damages.

Between 1975 and 1978 the appellants (Wallners) owned and operated the Wallner Foster Care Home (Home) in Bozeman, Montana. Between four and ten elderly people lived in the Home at any given time in exchange for a fee. They required various degrees of care ranging from supervised medication to personal care. Prior to opening the Home, Wallners obtained a Foster Care Home license from Social and Rehabilitation Services (SRS), but subsequently allowed it to lapse.

In 1981 Wallners listed the Home for sale with United Agencies of Bozeman. Some months later Careys began negotiating with Wallners for the purchase of the property. Although Wallners assured Careys that no license was required, Carey inquired of the Gallatin County Sanitarian and the Montana Department of Health and Environmental Sciences (DHES) about the need to have a license, but received uncertain information. Both parties and at least one county official believed the business was in conformity with the Bozeman zoning ordinance. Carey testified he did not want to buy a business that was not in conformity with

the zoning ordinance or one that was regulated by the government, that is, required licensing.

In January, 1983, the parties entered into a contract for deed for a total purchase price of $120,000. Careys made a $20,000 down payment and monthly payments of $1,000 for each of the next three months. They also made one payment of $1,000 against the principal. Carey was a real estate agent working for United Agencies and received part of the commission paid by Wallners for the sale.

Careys began operating the Home. They converted the carport into a room for the manager and his wife and built a separate garage. Later they applied for a building permit and a zoning variance to allow expansion of the Home to accommodate up to sixteen patients. During the hearing on that request a number of protests to granting the variance were expressed by neighbors, and at the conclusion of the hearing the Bozeman Board of Adjustment denied the variance. As a result of the hearing, Careys learned the Home did not conform to the zoning ordinance and consequently could not be operated as the kind of facility Wallners had operated. Shortly thereafter the DHES contacted Carey and informed him the business he was operating was a personal care facility and a license was required. His application for a license was denied after state officials inspected the Home. In April Carey notified Wallners in writing of his zoning and licensing problems and suggested they resume their previous business in the facility, or as an alternative, charge Careys solely for the use of real estate and not the business. The letter said: "If either of the above alternatives are not acceptable to you, then we will be forced to rescind the contract." Wallners did not respond to the letter. Carey

3

did not make any payments after April. All the patients in the Home were moved out by June 1.

On June 1, Careys sold a contract for deed they held on some real estate in Spokane to pay off their loan on the conversion of the carport to a room. Toward the end of June, Careys rented the Home as a private residence. In July Careys notified Wallners they were in default under the terms of the agreement, specifically setting forth the license warranty paragraph contained in the contract for deed:

> 14. Special provisions
> Seller warrants that no license is required to operate the above described property as a foster care home, and that no restrictions or license will be required as a result of the change of ownership.

In August Wallners notified Careys they were in default for failure to make monthly payments. Careys filed a complaint alleging mutual mistake of fact and failure of consideration and petitioning for rescission.

The District Court found (1) the business required a license before and after the contract for deed was executed; (2) the business could not be operated in compliance with the Bozeman zoning ordinance; (3) Careys were entitled to rescind the agreement because at the time the contract for deed was executed both parties believed the business was in compliance with the zoning ordinance and this was a mutual mistake of fact; (4) Wallners had warranted that no license was needed and breached the contract by backing out of this warranty, and there was a partial failure of consideration because Wallners did not transfer a going business; (5) title to the premises was to be vested in Wallners; (6) Careys were entitled to damages of approximately $34,599.03.

4

The Court will consider whether the Careys have adequate grounds for rescission of the contract for deed and if rescission is in order, what damages each party suffered.

In reviewing the evidence in the record we will not set aside findings of fact unless they are clearly erroneous. Rule 52(a) M.R.Civ.P. "We will not reverse the trial court in an equity case on questions of fact unless there is a decided preponderance of the evidence against the trial court." Rase v. Castle Mountain Ranch, Inc. (Mont. 1981), 631 P.2d 680, 684, 38 St.Rep. 992, 996.

A basic principle of contract law, of course, is that there must be consideration in order to have a valid contract. Section 28-2-102(4), MCA, Boise Cascade v. First Security Bank of Anaconda (1979), 183 Mont. 378, 391, 600 P.2d 173, 181. Further, rescission of a contract can be undertaken only under certain circumstances.

> 28-2-1711. When a party may rescind. A party to a contract may rescind the same in the following cases only: (1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake . . . (2) if, through the fault of the party as to whom he rescinds, the consideration for this obligation fails in whole or in part; . . .

Appellants, Wallners, argue there were no adequate legal grounds for rescission. Resolution of this issue turns on whether there was mistake and/or failure of consideration. Consideration is defined as "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, . . . " § 28-2-801, MCA. Wallners make a convoluted argument the Home they transferred to Careys did not require licensing for

5

elderly care facilities and therefore was a going concern at the time of the transfer, constituting consideration.

Their reliance on the so called Towe amendments, §§ 76-2-411 and -412, MCA, is misplaced. The Towe amendments were enacted to facilitate location of group homes in residential neighborhoods. Their purpose was not to negate either the state licensing requirements for such homes, or relevant local zoning ordinances. The District Court was correct in finding as a matter of law a license was required to operate the Home. The Home did not meet the statutory requirements of a community residential facility:

> 76-2-411. Definition of community residential facility. "Community residential facility" means: (1) a community group home for developmentally, mentally, or physically disabled persons which does not provide skilled or intermediate nursing care; (2) a youth foster home or youth group home as defined in 41-3-1102; (3) a half-way house operated in accordance with regulations of the department of health and environmental sciences for the rehabilitation of alcoholics or drug dependent persons; or (4) a licensed adult foster family care home.

Wallners' beguiling attempt to bring the Home within the statute by arguing that elderly individuals with disabilities who live in a 24-hour-care home are handicapped, is unfounded. Nothing in the legislative history of these sections even hints at such a possibility, nor do Montana statutes so define handicapped individuals. The section does provide, however, that "a licensed adult foster family care home" is a community residential facility. Wallners warranted that no license was necessary. Careys received conflicting information from the Gallatin County Sanitarian and from officials at DHES about the need for a license.

6

When they applied for a license to operate a personal care facility, they were not able to obtain one.

Furthermore, Careys could not operate the Home as Wallners had because of the Bozeman zoning ordinance. Wallners' argument to the contrary, § 76-2-412(3) does not preempt local zoning ordinances:

76-2-412.

. . .

(3) Nothing in this section shall be construed to prohibit a city or county from requiring a conditional use permit in order to maintain a home pursuant to the provisions of this section, provided such home is licensed by the department of health and environmental sciences and the department of social and rehabilitation services.

The zoning ordinance was enacted in 1973 and Wallners began operating the Home in 1975. The Bozeman city attorney testified the only businesses grandfathered are those which pre-existed enactment of the zoning ordinance. It is clear both §§ 76-2-411 and -412(3) required the Home to be licensed by the State and it was not. Nor was Careys' application for a license granted.

The District Court did not err in finding the Home violated the Bozeman zoning ordinance. "There is absolutely no question that in Montana a group home for eight or fewer people is a residence and may be located in any area in Montana zoned residential." Mahrt v. City of Kalispell (Mont. 1984), 690 P.2d 418, 419, 41 St.Rep. 1979, 1980. However, the Home was not a community residential facility under § 76-2-411, and therefore could not be operated in compliance with Bozeman's zoning ordinance.

Careys did not receive what they bargained for. They were unable to operate the Home as the kind of business they

7

intended at the time of the purchase. When there is failure of consideration, rescission is proper.

Rescission also is proper because of mistake.

> 28-2-409. What constitutes mistake of fact. Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in: . . . (2) belief in the present existence of a thing material to the contract which does not exist or in the past existence of such a thing which has not existed.

A mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence. Bailey v. Ewing (Idaho 1983), 671 P.2d 1099, 1102. The mistake must be material, or, in other words, so substantial and fundamental as to defeat the object of the parties. Woodahl v. Mathews (1982), 196 Mont. 445, 453, 639 P.2d 1165, 1169. A unilateral mistake is not normally grounds for relief for the mistaken party, whereas a mutual mistake is. A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain. Bailey, supra.

Both Careys and Wallners shared the basic misconception that a state license was not necessary to operate the Home. In fact Careys were particularly interested in purchasing a business for which no license was required. Wallners had operated the Home without a license for several years and warranted that none was required. Whether or not Careys could have obtained a license of any kind which would comply with the Bozeman zoning ordinance is irrelevant. Clearly there is mutual mistake which is so substantial and fundamental as to defeat the object of the parties.

Wallners claim because Carey neglected his legal duty to disclose the fact he was both the realtor and the purchaser

8

he cannot now rescind by claiming mistake of fact. Carey did, in fact, acknowledge he was a licensed real estate agent in the State of Montana in the contract for deed. It is Wallners who failed in their legal duty to live up to the terms of the contract. At the time of the execution of the contract for deed, both parties believed the business did not require a state license to operate, and that it was in compliance with the Bozeman zoning ordinance. Wallners warranted the same in the contract. Careys signed the contract believing the representation made to them by Wallners. In other words, they "[b]elieved in the present existence of a thing material to the contract which does not exist . . ." § 28-2-409(2), MCA. Their legal duty to execute the sale agreement with the prudence and care of a reasonable and cautious businessman was carried out. Quinn v. Briggs (1977), 172 Mont. 468, 478, 565 P.2d 297, 302. In fact, their inquiries about the licensing requirement resulted in conflicting responses, and they relied on Wallners warranty no license was necessary. The burden of the mistake must fall on Wallners. Consequently, Careys can rescind the contract.

Wallners argue because they cannot be restored to the status quo, pursuant to § 28-2-1713(2), and § 28-2-1715, MCA, rescission is improper. Absolute and literal restoration is not required, it being sufficient if the restoration be such as is reasonably possible or as may be demanded by equity. O'Keefe v. Routledge (1940), 110 Mont. 138, 146-147, 103 P.2d 307, 310. Careys contracted for real estate and an ongoing business, but in return received real estate and an illegal business. After learning of the licensing requirements Careys attempted unsuccessfully to obtain a license for the

Home. They then offered to return to Wallners the real estate and illegal business, or to pay for the real estate only, but Wallners refused their offer. Subsequently the property was appraised by a certified appraiser at $75,000, exclusive of any business estimates.

To satisfy § 28-2-1713(2), and § 28-2-1715, MCA, each party must restore to the other everything of value received under the contract. Restoration of the status quo to each party is possible. Wallners are entitled to receive the real estate commission earned by Carey, income from the property earned by Careys, presently held by the District Court, plus interest, and the net profit from operation of the Home. Title of the premises should be vested in Wallners. We find the District Court erred in determining damages to be awarded to Careys. It failed to properly award them the money they paid toward the principal and it improperly awarded them one half of their loss on the discounted contract. Careys are entitled to receive refunds of their expenditures, including their down payment, payments they made toward principal and interest, and the cost of the addition to the property. They are not entitled to recover any loss on the discounted contract for deed which they sold.

Careys are entitled to recover attorney fees. The contract provided:

> [i]f it becomes necessary for either party hereto to bring suit to enforce their rights under this agreement and, if that party shall prevail in such action, the other party agrees to pay all costs of the action as by the Court allowed, together with a reasonable attorney fee for the prevailing party.

Pursuant to § 28-3-704, MCA, contractual rights to attorney fees are treated as reciprocal. The effect of the statute is

10

to give a reciprocal right to attorney fees to all parties to a contract which provides for attorney fees.

This reciprocal right is available to all parties to the contract in any action on the contract, regardless of which party institutes the action. Comptoro v. Alcorn (1976), 171 Mont. 230, 235-236, 557 P.2d 292, 296. See also Preston v. McDonnel (Mont. 1983), 659 P.2d 276, 278, 40 St.Rep. 297, 300, and Rauch v. Michel (Mont. 1986), 716 P.2d 617, 620, 43 St.Rep. 587, 591. In this case Careys petitioned to rescind, and being found entitled to rescind, they are the prevailing party.

The order of the District Court finding rescission is upheld, and the case is remanded with instructions to determine damages consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11