No. 89-54

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

FRANK MITCHELL and EVELYN MITCHELL,

       Plaintiffs and Respondents,

-vs-

LYLE BOYER and MINNIE BOYER,

       Defendants and Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,
           In and for the County of Ravalli,
           The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jeffrey H. Langton, Hamilton, Montana

    For Respondent:

        Brian L. Delaney; Mulroney, Delaney & Scott, Missoula,
        Montana

Submitted on Briefs: April 20, 1989

Decided: June 1, 1989

Filed:

_____
               Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves an agreement to purchase land located near Corvallis, Montana. Defendants Lyle and Minnie Boyer (Boyers) appeal from the judgment of the District Court of the Fourth Judicial District, Ravalli County, granting recision of the agreement. The Court awarded plaintiffs Frank and Evelyn Mitchell (Mitchells) damages based on the down payment, earnest money and escrow payments made; amounts expended for improvements to the property; and prejudgment interest at an annual interest rate of ten percent from a date thirty days after Mitchells initially offered to rescind the agreement. We affirm.

Boyers present two issues for review:

1. Did Mitchells' reliance on the innocent misrepresentations of Lyle Boyer constitute negligent reliance, barring the remedy of recision?

2. Did the District Court err in finding that Lyle Boyer's misrepresentations gave rise to a breach so material as to excuse Mitchells' duty of performance and rescind the contract?

The property at issue in this case was originally part of a larger tract belonging to David and Clara Leicht. In 1978, the Leichts sold two parcels of their land to the Tices, who are not parties to this suit. Lyle Boyer was the real estate agent involved in that sale. At some point after the sale had been negotiated, but before the deeds to the property had been delivered, a disagreement arose between the Leichts and the Tices as to what would constitute allowable use of the parcels. The end result of this disagreement was that the parcel here at issue was subjected to a restrictive covenant, duly recorded in the Ravalli County Clerk and

Recorder's Office at Book 148, page 117, which: a) prohibited subdividing the parcel into more than three lots, b) restricted use of the property to agricultural purposes and c) provided that no more than two houses with attendant outbuildings could be built on the parcel. This covenant was to remain in force for as long as the Leichts continued to hold any interest in their remaining property, which bordered the parcel.

Soon after this initial transaction took place, the Tices subdivided the parcel into three lots. Tices then sold two of the lots to the Boyers under a contract for deed. The description of the property in the contract executed by the Tices and the Boyers refers to it as being part of Orchard View Estates, and subject to restrictions "as contained in Book 148 Deeds, page 117." However, at the end of the contract, in a paragraph entitled "Miscellaneous", the contract states that the restrictions will be lifted when the Leichts no longer own any interest in the property that is the subject of the contract. In other words, the restrictions will be lifted when the Tices pay off their obligation as purchasers of the parcel from the Leichts.

Boyers then listed the lots they had just purchased as being for sale. The Mitchells saw an advertisement for the lots in a newspaper, contacted the Boyers and set up an appointment to view the property. At this appointment, the Mitchells indicated their interest in the property, and asked about terms. Lyle Boyer told the Mitchells that basically they would pay a sum to the Boyers and then assume Boyers' interest in the contract for deed with the Tices. At the end of ten years, the Mitchells would make a balloon payment. The Mitchells related to Lyle Boyer their plan to further subdivide the lots, if necessary, in order to raise money to make the balloon payment. He told them of the building

3

restrictions, and indicated that the restrictions would be lifted as soon as the Tices paid off their obligation to the Leichts, which he estimated would happen in the near future. Based on these discussions, the Mitchells entered into an agreement to purchase the Boyers' interest.

For reasons that are not relevant here, the Leichts became concerned about how the land they had sold was being developed. In early 1986, they contacted an attorney, who sent a letter to lot owners, including the Mitchells, describing the restrictions and noting that they would not be lifted while the Leichts remained on their adjacent property. Upon receiving the letter, the Mitchells discussed the matter with the attorney who wrote the letter, the attorney who had closed their purchase of Boyers' interest, and their own attorney. They contacted the Boyers, but apparently were unsuccessful in attempting to work things out. Mitchell's attorney offered to rescind the contract, but the Boyers were unwilling to do so.

The Mitchells filed a complaint against the Boyers on April 23, 1987. According to the complaint, Lyle Boyer had misrepresented the duration of the restrictions, and the Mitchells agreed to purchase the property in reliance on those misrepresentations. Count One of the complaint alleged that Lyle Boyer's actions amounted to negligent misrepresentation, Count Two alleged actual or constructive fraud, and Count Three alleged mutual mistake. All three counts sought basically the same measure of damages: recision of the contract, return of moneys paid out by the Mitchells for the property, and their costs and attorney's fees incurred in the action.

The case was tried to the District Court, sitting without a jury. On July 18, 1988, the court issued its Findings of Fact, Conclusions of Law, and Judgment. The

4

court held in favor of the Mitchells on Count One. The court found that Boyer's misrepresentations had been made innocently, but were negligent in that as a real estate agent, he should have known they were false. This appeal followed.

This case is in equity. As a result, the scope of our review is set by statute, and is very broad. Under § 3-2-204, MCA, this Court reviews all questions of fact and law in equity cases and makes its own determination based on that review. In this case, the District Court held Boyers liable for Lyle Boyer's negligent misrepresentations. On appeal, Boyers assign error to this ruling. Their first argument asserts that the Mitchells' reliance on those misrepresentations was in itself negligence, which precluded the court's award of recision. Our review of the case shows that we need not address Boyers' arguments. In fact, Boyers' first argument points to a resolution to this case that present itself prominently in the record. Irrespective of any negligence, this is a case of mutual mistake.

A mutual mistake occurs when, at the time the contract is made, the parties share a common misconception about a vital fact upon which they based their bargain. Carey v. Wallner (Mont. 1986), 725 P.2d 557, 43 St.Rep. 1706. Such a mistake is a proper ground for recision. Section 28-2-1711, MCA; Wallner, 725 P.2d at 561. It was very important to the Mitchell's when they considered buying these lots from the Boyers that they have the option to subdivide the lots in order to make the scheduled balloon payment. According to Boyers' contract with the Tices, the restrictions on subdividing and building would be removed once the Tices finished paying the Leichts for the parcel out of which the Boyers' lots were carved. Lyle Boyer related this to the Mitchells.

5

Lyle Boyer testified at trial that his representations to the Mitchells honestly reflected his impression of the restrictions. He had not been privy to the negotiations that resulted originally in the restrictions being placed in the deeds, and had never been informed as to their content beyond the language found in the contract between the Boyers and the Tices. He further testified that he did not discover the truth about the restrictions until 1986, when he read the letter written by the Leichts' attorney. The Mitchells testified that because Lyle Boyer was a real estate agent, they assumed that his representations were accurate and truthful. It is therefore apparent that the Boyers and the Mitchells were both mistaken at the time the contract was made; they were laboring under a common misconception about when the restrictions would be removed. Recision was therefore proper.

We affirm the decision of the District Court.

_____
                                   Justice

We Concur:

_____
            Chief Justice

_____

_____

_____
            Justices