No. 00-654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 64N

KESTER C. ROMANS,

Petitioner/Appellant,

v.

LIBERTY MUTUAL FIRE INSURANCE

COMPANY,

Respondent/Insurer/Respondent.

SUPERVALU, INCORPORATED,

Employer.

APPEAL FROM: Workers' Compensation Court, State of Montana

The Honorable Michael McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kester C. Romans (pro se), Livingston, Montana

For Respondent:

William J. Mattix, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P.,

Billings, Montana

Submitted on Briefs: January 11, 2001
Decided: April 18, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 On March 25, 1999, Kester C. Romans petitioned the Montana Workers' Compensation Court to set aside his Compromise and Release Settlement with Liberty Mutual Fire Insurance Company (Liberty Mutual) on the basis of mutual mistake of fact. After a hearing, the Montana Workers' Compensation Court entered its Findings of Fact, Conclusions of Law and Judgment concluding that there was no mutual mistake of fact and no basis to set aside the settlement. Romans filed a motion for a new trial which was denied. Romans appeals. One issue is dispositive: Did the Workers' Compensation Court err in determining that the parties were not laboring under a mutual mistake of fact at the time Romans settled his workers' compensation claim with Liberty Mutual?

## BACKGROUND

¶3 On October 12, 1993, Kester Romans injured his right foot while employed as a stocker at a grocery store in Livingston, Montana. His employer was insured for workers' compensation purposes by Liberty Mutual. On the day following the injury, Romans was examined by Dr. John G. Peterson, who diagnosed Achilles tendinitis secondary to the injury, wrapped his ankle, and prescribed ice, elevation, and anti-inflammatory medication. He also excused Romans from work the next day.

¶4 Romans proceeded with a protracted course of treatment, the nature and extent of which is not entirely relevant to the issues in this appeal. Of significance, however, was a

functional capacities evaluation performed on May 9 and 10, 1994, by physical therapist Gary Lusin. Lusin performed a standardized five hour evaluation over a two day period and concluded that Romans was capable of returning to work with a light or medium physical demand level. Romans claims that Lusin injured his low back during the evaluation.

¶5 On August 1, 1994, Romans underwent an independent medical evaluation by Dr. William Shaw. Romans related to the physician that he developed low back pain following the functional capacities evaluation. He also indicated that he still suffered pain in his foot. Dr. Shaw's examination showed no physical evidence of back trauma or injury, and Dr. Shaw referred Romans to a foot specialist, Dr. James Elliot.

¶6 Romans continued to be treated by a variety of doctors. Liberty Mutual provided vocational rehabilitation services, but ultimately Romans was uninterested. In April of 1996, however, the rehabilitation specialist reported that Romans indicated that he had applied for social security benefits and railroad disability benefits, and that he believed himself to be unemployable. On June 7, 1996, he was examined by Dr. Thomas Hildner. Romans told Dr. Hildner that he injured his back while working for the railroad three years prior to the examination. He also told Dr. Hildner that he had been unable to work since the railroad injury due to the back pain. Romans was awarded disability benefits under the Railroad Retirement Act.

¶7 On January 10, 1997, Romans' attorney wrote a letter to Liberty Mutual stating that Romans was experiencing low back pain which he attributed to the functional capacities evaluation conducted in May 1994 and requested an evaluation of his back pain by an orthopedist. An independent medical evaluation was scheduled with Dr. John Vallin, a specialist in physical medicine and rehabilitation. After an examination, Dr. Vallin reported that Romans displayed overly exaggerated symptoms and "perceive[d] himself as much more disabled than he is in reality." In his report, Dr. Vallin stated that he believed that Romans sustained a mild lumbar strain that he recovered from completely in 1994. A subsequent MRI of his lumbar spine indicated some manifestations of early degenerative disk disease associated with normal aging but no objective findings that explained back pain.

¶8 In February 1997 Romans' attorneys terminated their representation of Romans. The attorneys noted that, in their opinion, Romans had unreasonable expectations. They recommended that Romans seek other counsel. In March 1997, without assistance of

counsel, Romans entered into a Compromise and Release Settlement with Liberty Mutual, providing for a lump sum payment of $19,381.68. The settlement was approved by order of the Montana Department of Labor and Industry on April 8, 1997. Romans testified at trial that he thought he was totally disabled prior to entering the settlement. Romans subsequently consulted with a number of physicians regarding continued pain in his foot and back.

¶9 On July 13 and 14, 1998, Liberty Mutual arranged for Romans to be evaluated by an independent medical panel at St. Patrick Hospital in Missoula, Montana. The panel issued a report after the examination, indicating that Romans' overall medical prognosis was good and that his impairment rating, performed in accordance with the American Medical Association guidelines, was 0%. The examiners also determined that there was no clear causal relationship between Romans' current complaints and his reported injury. Tests and examinations showed no objective indications of Romans' complaints of lower back pain and twitching of the right foot or both feet. Several examiners indicated that they believed that Romans might be over-exaggerating his symptoms.

## STANDARD OF REVIEW

¶10 We review a judgment of the Workers' Compensation Court to determine if the findings of fact are supported by substantial credible evidence and whether its conclusions of law are correct. *See Matthews v. State Compensation Ins. Fund*, 1999 MT 225, ¶ 5, 296 Mont. 76, ¶ 5, 985 P.2d 741, ¶ 5.

## DISCUSSION

¶11 Did the Workers' Compensation Court err in determining that the parties were not laboring under a mutual mistake of fact at the time Romans settled his workers' compensation claim with Liberty Mutual?

¶12 Romans contends that both he and Liberty Mutual were laboring under a mistake of fact when they entered into a settlement agreement. Romans argues that at the time of the settlement agreement, the parties to the settlement were unaware of the true nature and severity of his back injury allegedly sustained during the 1994 functional capabilities evaluation. He urges this Court to reverse the Workers' Compensation Court, set aside the settlement, and declare him totally disabled.

¶13 Liberty Mutual contends the Workers' Compensation Court correctly decided the case in that there was no mutual mistake of fact - both Romans and Liberty Mutual were fully aware of his condition at the time of the settlement. The Workers' Compensation Court concluded that there was no basis for rescinding Romans' 1997 settlement because no credible evidence was presented to support a conclusion that the parties were mutually mistaken about Romans' condition. We agree.

¶14 A contract, such as a full and final settlement, may be rescinded when "the parties share a common misconception about a vital fact upon which they based their bargain." *Mitchell v. Boyer* (1989), 237 Mont. 434, 437, 774 P.2d 384, 386 (citations omitted). Where findings in medical reports following a settlement are consistent with those prior to the settlement, where the impairment rating is substantially unchanged, and where the claimant is in much the same condition as at the time of settlement, there is no mutual mistake of fact to justify reopening a settlement. *Kimes v. Charlie's Family Dining & Donut Shop* (1988), 233 Mont. 175, 178-179, 759 P.2d 986, 988. Such is the case at hand.

¶15 The general consensus among the physicians who examined and treated Romans was that any injury that Romans may have sustained to his back during the functional capacity evaluation was nothing more severe than a strain. For example, Dr. Snider indicated that symptoms exhibited by Romans were most likely related to his long term smoking habit, and opined that Romans should receive a permanent physical impairment rating of zero. Dr. Snider and Dr. Vallin examined Romans' MRIs and indicated they were normal. The medical evaluation panel at St. Patrick Hospital also concluded that Romans' impairment rating was zero and that his test results did not indicate any injuries. Romans has not brought forth any persuasive evidence that his true condition was somehow hidden from both him and Liberty Mutual at the time the settlement was reached. Of further significance is Romans' trial testimony that he felt that he was totally disabled *before* he entered into the settlement.

¶16 Where there is substantial evidence to support the findings of the Workers' Compensation Court, we will not overturn the decision. *See Strickland v. State Compensation Mut. Ins. Fund* (1995), 273 Mont. 254, 257, 901 P.2d 1391, 1393. In this case, there is substantial evidence supporting the determination of the Workers' Compensation Court that both parties were aware of the nature of Romans' back condition when entering into a settlement agreement.

¶17 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART