No. 81-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

ADRIAN O. MATHIS, d/b/a A-M
ELECTRIC SERVICE,

                    Plaintiff and Appellant,

    vs.

CLAIR W. DAINES, et al.,

                    Defendants and Respondents.

---

Appeal from:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin.
              Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

    For Appellant:

        Wellcome and Frost, Bozeman, Montana

    For Respondents:

        Landoe, Brown Law Firm, Bozeman, Montana
        Berg, Coil, Stokes and Tollefsen, Bozeman, Montana

---

                        Submitted on briefs: September 3, 1981

                            Decided: January 14, 1982

Filed:JAN 1 4 1982


_Thomas J. Kearney_____
                            Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Eighteenth Judicial District, holding (1) the defendants not indebted to the plaintiff for labor, materials, and work performed in the construction of defendants' building, Plaza II, (2) invalidating plaintiff's mechanic's lien on the real property, (3) granting judgment to the defendants on their counterclaim in the amount of $675.98, and (4) awarding defendants costs and attorneys fees.

On April 3, 1980, plaintiff Adrian O. Mathis, doing business as A-M Electric Service, filed a mechanic's lien on the subject real property for labor, material and work performed by the plaintiff in the construction of Plaza II, a dentist and office complex. On April 21, plaintiff filed his complaint and named as defendants (hereinafter Daines) the general partners in Plaza II, a Montana partnership, Clair W. Daines, Donald R. Ferron and Stephen L. Black, the general contractor on the project, Clair W. Daines Incorporated, the financing institutions, First National Bank in Bozeman and State of Montana Public Employees' Retirement System, and American Land Title Company as the trustee named in the Deed of Trust securing the amounts financed.

The District Court, sitting without a jury, heard the case beginning on July 21, and on February 5, 1981, made written findings of fact and conclusions of law and entered judgment thereon Mathis now appeals, raising the following issues:

1. Whether plaintiffs "proposal and contract" is void for vagueness as a matter of law.

2. If plaintiff's "proposal and contract" is not void as a matter of law, whether plaintiff's requests for payment for extra material and labor furnished in connection with Plaza II can be sustained on any other theory of recovery.

The facts as found by the District Court are these: Mathis is an electrical subcontractor who had performed numerous contract jobs for Daines for a period of approximately three years. Daines is a general contractor engaged in residential and commercial building in the Bozeman area.

Most of the jobs performed by Mathis for Daines were residential, but later contracts involved the construction of dental and office complexes, including the Spain Building and Plaza I, the latter adjacent to Plaza II. Mathis and Daines contracted on these two buildings following the custom they had established on previous jobs. By that custom, Mathis would make an informal oral bid for the wiring of a residence and Daines would orally accept.

Problems arose when, on the Spain and Plaza I contracts, Mathis claimed numerous "extras" that substantially exceeded his original bid. In order to avoid this on the Plaza II job, Daines told Mathis that any bid would have to be made in writing. There were no architect's drawings for Plaza II, but the parties did discuss what type of building it would be. Essentially, it was to be of the same kind as Plaza I but approximately twice the size. Mathis had worked on Plaza I and he made his bid for Plaza II on that basis.

On October 10, 1979, Mathis submitted a bid of $21,400.00, roughly two times what he had bid on Plaza I. This written bid was titled "Proposal and Contract" and contained the following provision:

"Any alteration or deviation from the above specifications involving extra cost of material or labor will only be executed upon written orders for same, and will become an extra charge over the sum mentioned in this contract. All agreements must be made in writing."

All subcontractors, including Mathis, were informed that any extra work requested by a tenant of Plaza II beyond the preliminary plans modeled on Plaza I would have to be paid for by that tenant.

Mathis was awarded the bid and construction commenced in November of 1979. In accordance with their contract, Daines paid to Mathis $5,000.00 per month in the months of November, December and January. The next draw was made on January 31, 1981, but $2,000.00 was held back by Daines because Mathis had started to fail to show up for work. Included in the draw was payment of a $249.00 claim for extras ordered by a tenant, which made the total draw $2,249.00.

Mathis did not work after February 23, 1980. It was on that day that he contacted Daines demanding payment for a number of extras claimed in connection with several Plaza II tenants and also unrelated jobs. On March 10, after Mathis was terminated, he submitted a bill detailing additional light fixtures and other extras which brought his total claim to $14,398.48.

Daines approved a total of $697.20 in extras, all in connection with Plaza II tenants. That sum, when added to the $21,400.00 originally bid, made the total contract job worth $22,097.20. Mathis was paid $18,249.00 and a second electrical contractor hired to complete the job was paid $4,523.98. In total, Daines paid $22,772.98 to complete the job, $675.98 above what it should have cost. This difference represents the amount the District Court awarded Daines on his counterclaim.

In addition, the court held that the mechanic's lien filed against Plaza II by Mathis was not valid and ordered it removed, awarding Daines costs and attorneys fees.

We find no error in the ruling of the District Court. Although we use slightly different figures in our computations, the result is the same except for a $.20 miscalculation by the District Court. If $22,772.98 is the total amount paid for the job by Daines, and $22,097.20 is the amount of the bid plus approved extras, Daines' counterclaim is worth $675.78, $.20 less than the District Court awarded. We disregard this as de minimis.

Appellant's primary argument is that the "Proposal and Contract" entered into by the parties is void for vagueness as a matter of law. The District Court considered this argument, stating that it "might buy the argument about ambiguities and uncertainties if the background of the parties had not been testified to so completely by both parties." In this regard, it cited section 28-3-402, MCA, which states:

> "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

The most important circumstance in this case is the long course of dealings between the parties. They had worked together on various projects for a period of nearly three years. They had completed two dental office buildings similar to Plaza II. One of them, Plaza I, served as the model for Plaza II. In fact, Mathis knew that Plaza II was to be approximately twice the size of Plaza I, and it is instructive to note that his bid on Plaza II was almost exactly two times the amount he bid on Plaza I.

It is not difficult to determine the intent of the parties to this contract. Daines wanted to avoid paying for

the extra charges that he had come to expect from Mathis, absent some prior approval. He requested a written bid and that bid, as found by the District Court, "was not on so many lights, so many openings, but was based upon the understanding between the parties that the Plaza II would be comparable to Plaza I . . ." This is the critical element to consider in an examination of the following relevant language from the bid:

> "A-M Electric propose to furnish all materials and perform all labor necessary to complete the following: All wiring, 50 cans, 8 meters and necessary fluorescent lights for Plaza II . . .
>
> "All of the above work to be completed in a substantial and workmanlike manner according to standard practices for the sum of $21,400 . . .
>
> "Any alteration or deviation from the above specifications involving extra cost of material or labor will only be executed upon written orders for same, and will become an extra charge over the sum mentioned in this contract. All agreements must be made in writing." (Handwritten portions underlined.)

In McDonald v. McNinch (1922), 63 Mont. 308, 313, 206 P. 1096, 1097, a similar question was raised as to whether a lease was void for uncertainty. There, we said:

> "It is not material to inquire whether the terms of this contract might or might not have been expressed more definitely. It may be conceded that there are ambiguities and uncertainties present, but this court is not authorized to declare the lease void unless the conclusion is compelled that its object is 'wholly unascertainable.'" (See section 28-2-603, MCA.)

We are not compelled to conclude here that the object of the written bid was "wholly unascertainable." In its construction the District Court was guided by what we stated in Kintner v. Harr (1965), 146 Mont. 461, 472, 473, 408 P.2d 487, 494:

"It is a fundamental rule that in the con-
struction of contracts the courts may look not
only to the language employed, but to the subject-
matter and the surrounding circumstances, and may
avail themselves of the same light which the parties
possessed when the contract was made. (Citation
omitted.) To ascertain the intention, regard must
be had to the nature of the instrument itself, the
condition of the parties executing it, and the
objects which they had in view. The words employed,
if capable of more than one meaning, are to be
given that meaning which it is apparent the parties
intended them to have."

The appellant also comes face to face with the provisions

of section 28-3-206, MCA:

"In cases of uncertainty not removed by parts
1 through 5 of this chapter, the language of
a contract should be interpreted most strongly
against the party who caused the uncertainty
to exist. The promisor is presumed to be such
party . . ."

Here, Mathis is the promisor and also the party who

drafted the contract. Any uncertainty in a contract must be

resolved against the person drafting it. Shanahan v.

Universal Tavern Corp. (1978), ___ Mont. ____, 585 P.2d

1314, 1317, 35 St.Rep. 1585, 1588.

Mathis further argues that, even if the contract is not

void, the provision for written orders was waived or modified

by executed oral agreement. In this regard, he cites

Matzinger v. Remco, Inc. (1976), 171 Mont. 383, 387, 558

P.2d 650, 652:

"This Court in Dalakow v. Geery, 132 Mont. 457,
464, 465, 318 P.2d 253, 257, summarized the law
in Montana and said:

"Roberts v. Sinnott, 55 Mont. 369, 177 P. 252,
is strikingly similar to the present case.

"That case involved a written contract to furnish
certain materials and perform the work necessary
for the erection of a dwelling. The plaintiff-
contractor brought action upon the original agree-
ment and each of twenty-five oral contracts
supplemental thereto. The original contract
contained a stipulation that no charges for extra
work would be allowed unless ordered in writing,
so the defendant contended there could be no
recovery on the oral agreements. But this court
. . . said:

-7-

"'The provision of the contract above was manifestly intended for the protection and benefit of the owner, and no reason can be suggested why it might not be waived. The authorities are quite uniform in holding that, notwithstanding such a provision, the parties may make subsequent independent oral agreements which, when executed, have the effect of modifying the original contract, and the rule has been recognized in this jurisdiction.'"

Mathis' case does not quite meet this authority. There is ample justification in the record for the District Court's determination that the contract in this case "was waived as far as the small amount of extras are concerned but was not waived as concerns the extras in the bill of March 31, 1979." Waiver is generally defined as a voluntary and intentional relinquishment of a known right. Mundt v. Mallon (1938), 106 Mont. 242, 248, 76 P.2d 326, 328. Waiver may be proved by express declarations or by a course of conduct so as to induce the belief that the intention and purpose was to waive. Northwestern Fire & Marine Ins. Co. v. Pollard (1925), 74 Mont. 142, 149, 238 P. 594, 596. Lacking in the evidence here is any indication of a voluntary relinquishment by Daines of his right to object to the extras contained in the bill of March 31, 1979. The District Court's finding on this point must be sustained unless clearly erroneous. Rule 52(a), M.R.Civ.P. We find no error.

Mathis' lien not being established, Daines must be allowed reasonable attorneys fees. Section 71-3-124, MCA.

Affirmed.

_John C. Sheehy_
Justice

-8-

We Concur:

_John Conway Harrison_

_Daniel J. Shea_

_[signature]_

_[signature]_
Justices