No. 84-495

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

JOHN FORSYTHE and BETH TINNEY,

Plaintiffs and Appellants,

-vs-

DAN ELKINS, DIANE ELKINS, CLARENCE
HENDON, and MICHAEL HENDON,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Sol & Wolfe, Missoula, Montana

For Respondents:

Persson & Weber, Hamilton, Montana

---

Submitted on Briefs: Feb. 14, 1985

Decided: May 13, 1985

Filed: MAY 1985

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by John Forsythe and Beth Tinney (Forsythe-Tinney) from an order and judgment of the District Court, Fourth Judicial District, Ravalli County, denying Forsythe-Tinney rescission of an agreement to purchase an interest in real property, and further denying their petition to quiet title in them as owners of an equitable interest in certain real property in Ravalli County and from that portion of the judgment determining money damages between the parties.

Dan Elkins cross-appeals from the judgment of the District Court, awarding to Forsythe-Tinney punitive damages in the sum of $1,000 and attorney fees.

On September 8, 1980, Dan Elkins and Diane Elkins, husband and wife (Elkins), entered into a written contract for deed with Gerald Raley and Debra L. Raley, of Victor, Montana, for the purchase by Elkins from Raley of certain real estate located in Ravalli County, Montana, for a total purchase price of $53,000. The purchase price was to be paid in installments, $14,000 on the execution of the contract, $11,900 due September 5, 1982, with interest at 10 percent per annum, and $27,100 at the rate of $250 per month until the purchase price and accrued interest was fully paid but in any event the entire balance to be paid in full on January 20, 1989.

Prior to the execution of the written contract with Raleys, Elkins had entered into an oral contract with Forsythe-Tinney respecting the purchase. Under their oral agreement, the written contract for the purchase of the real

estate would be executed in the names of Elkins as the purchasers. Elkins would make the first payment of $14,000 and the second payment of $11,900 plus interest due on September 5, 1982. Forsythe-Tinney would make the monthly payments of $250, and the final payment due on January 20, 1989. When Forsythe-Tinney had paid one-half of the purchase price, their names would be entered on the records of Ravalli County as co-purchasers of the Raley property. Both Forsythe-Tinney and Elkins would have the right to occupy trailer residences on the premises.

In November 1981, the son-in-law and daughter of the Elkins, Clarence Hendon and Michael Lou Hendon (Hendon) moved a trailer home onto the real property that was being purchased. Their residency on the property was apparently with the consent of all the parties.

When the payment of September 5, 1982 came due, Elkins were unable to make the payment. With accrued interest, the needed sum was approximately $15,000. Some conversation had occurred between Elkins and Forsythe-Tinney as to whether Forsythe-Tinney would contribute one-half of the $15,000 payment. Forsythe-Tinney approached a Ravalli County bank and apparently obtained authorization for a $7,500 loan, but the loan was never completed. It appears that at the same time, the Hendons were going to contribute the other $7,500, but the condition of the bank in lending the money to Forsythe-Tinney was that Forsythe-Tinney's name would have to be placed on record as a contract purchaser; apparently no offer was made by Forsythe-Tinney to place the Hendon name on the record as a contract purchaser. Nothing came of that possible arrangement.

It developed therefore that Hendons made the approximately $15,000 payment due in September 1982. They made the payment after receiving from Elkins a written assignment for contract for deed from Elkins to Hendons covering all of Elkins' record interest in the contract of purchase with the Raleys. However, in making the written assignment to Hendons, Elkins reserved a life estate to themselves and to the survivor of them. There is no record of consent by Forsythe-Tinney to the assignment by Elkins to Hendons, nor to the reservation by Elkins of a life estate in themselves.

In addition to recording the assignment of the contract interest, Elkins and Hendons sent copies of the assignment to the escrow holder under the Raley contract for deed and a warranty deed for delivery by the escrow holder to Hendons when the Raley contract was fully paid.

At the time of the written assignment by Elkins to Hendons, Forsythe-Tinney had made the monthly payments of $250 in due time, and in fact had prepaid those payments through November 1982. After the written assignment to Hendons, Forsythe-Tinney refused to make further payments under the contract for deed although they continued in possession of their residence trailer on the property. At the time of the refusal, Forsythe-Tinney requested Hendons to refund to Forsythe-Tinney all amounts they had previously paid on the contract.

On February 8, 1983, Hendons caused a notice of eviction to be served upon Forsythe-Tinney. The notice of eviction precipitated a complaint in District Court filed by Forsythe-Tinney against the Elkins and the Hendons in which Forsythe-Tinney prayed for judgment returning to them the

- 4 -

$6,377 they had paid on the contract, for title to the property to be quieted to include their names as owners of record, for exemplary damages from the defendant, and for other relief not important here.

After the complaint was filed and while the litigation was pending, Forsythe-Tinney determined that Elkins mistakenly had cut off the water from the well to the Forsythe-Tinney trailer. In November 1983, Elkins did disconnect the sewer septic system servicing the Forsythe-Tinney trailer.

The District Court in its judgment in the case determined that Forsythe-Tinney were not entitled to rescission of their agreement with Elkins because they had not tendered their return of the claimed interest in the real property and had remained in occupancy on the property; that they were not entitled to specific performance because they did not offer to pay one-half of the amounts owed by Elkins on the Raley contract; that the assignment by Elkins to Hendons was not a fraudulent conveyance; that no false statements were made to Forsythe-Tinney by any of the defendants; that Forsythe-Tinney were not entitled to recover any damages on the theory of unjust enrichment; that Forsythe-Tinney owed Elkins $945.96; that the equity of Forsythe-Tinney in the contract of purchase should be equal to the amount of principal paid by the plaintiffs and not the interest paid thereon and the value of any improvements placed on the real property by the plaintiffs; and that the defendants be entitled to set off against those damages a reasonable rental for plaintiffs' use of the property from the inception of the oral agreement in the amount of $6,377. The District Court also found that Forsythe-Tinney were

- 5 -

entitled to recover $1,000 punitive damages, and attorney fees (claimed to be $4,900) from Dan Elkins.

Forsythe-Tinney has appealed from the judgment of the District Court as aforesaid, and Dan Elkins has cross-appealed from the award of punitive damages and attorney fees.

Forsythe-Tinney raise issues that the District Court's findings of fact contradict the evidence, that plaintiffs should have been awarded rescission of their contract with Elkins, that the court should have imposed a constructive or resulting trust on the defendant Elkins and upon the defendant Hendons, and that the court erred in offsetting a rental value against the plaintiffs' payments. Dan Elkins argues that the District Court should not have awarded punitive damages against him and the award of attorney fees against him was in error.

The District Court accepted the proposed findings of fact submitted by Elkins and Hendons nearly in toto, which accounts for the curious result that in effect the District Court's findings deemed Forsythe-Tinney the breaching party in this case.

At the time of the assignment by Elkins to Hendons, Forsythe-Tinney had fully performed their obligations under their contract with Elkins. They were not in default. In fact they had prepaid the monthly payments to November 1982.

Nothing in the oral agreement between Forsythe-Tinney on the one hand, and Elkins on the other, precluded either party from assigning his interest under the oral agreement. If a contract contains a provision for non-assignment by any of the parties, an assignment against such non-assignability clause precludes the establishment of privity between an

alleged assignee and the other party. Rother-Gallagher v. Montana Power Company (1974), 164 Mont. 360, 522 P.2d 1226. However, in the absence of a non-assignable clause, either party may generally make an assignment of rights under the contract. In Re Seiffert (D.C. Mont. 1926), 18 F.2d 444.

In the ordinary course, an assignment by a purchaser of his interest in the contract for deed to an assignee who assumes the obligations of the contract has the effect of placing the assignee in the shoes of the assignor and making him liable for claims arising out of the contract. Massey-Ferguson Credit Corporation v. Brown (1977), 173 Mont. 253, 567 P.2d 440. At the least, upon the assignment here, Hendons became primarily liable for the discharge of the obligations under the Raley contract, and his assignor, Elkins, became secondarily liable. Kintner v. Harr (1965), 146 Mont. 461, 408 P.2d 487. Moreover, since Hendons took the assignment of the Raley contract with notice of the oral agreement between Elkins and Forsythe-Tinney, Hendons took the assignment subject to whatever rights in the property Forsythe-Tinney may then have had by virtue of the oral agreement with Elkins.

Thus if this were an ordinary assignment, Hendons would stand in the shoes of Elkins, and if Forsythe-Tinney continued to perform their obligations under the oral agreement, Hendons would have the duty to add the names of Forsythe-Tinney to the record title of the property when Forsythe-Tinney had paid one-half or more of the purchase price under the Raley contract. In other words, after the assignment, if it were in the usual course, when the Raley contract and the oral contract were fully performed,

Forsythe-Tinney and Hendons would each be tenants in common of undivided shares in the real property purchased.

However, Elkins did not make an assignment to Hendons in the usual course. Elkins reserved to themselves life estates in the property subject to the assignment. By so doing, Elkins made it impossible for Hendons, as assignee, to deliver the quality of title to Forsythe-Tinney that had been bargained for in the oral agreement. If Forsythe-Tinney continued to perform the oral agreement, under the state of the record title, Hendons would be able to make Forsythe-Tinney tenants in common on the property purchased, but it would be subject to life estates. Unless Forsythe-Tinney consented, and there is no showing of consent here, it was impossible for Hendons, after the assignment, to deliver the same quality of title to the real property to Forsythe-Tinney if they had performed their portion of the oral contract after the assignment. At the point of the assignment under the circumstances of this case therefore, Elkins had breached the oral agreement by putting it out of his power, and out of Hendons' power, to deliver the kind of title that Forsythe-Tinney had agreed to purchase.

It is true that one may agree as vendor to sell property to another as vendee when the vendor does not in fact have the title in hand that he agrees to convey to the vendee. The rule is not iron-clad, however, and where during the time that the contract is executory, the vendor puts it out of his power to deliver the title which he contracted to sell, there is no reason why the vendee may not resort to his remedy of rescission.

> ". . . On the other hand, while a vendee may not complain of defects or encumbrances which are within the power of the vendor in due time to

> remove, he should not be expected to proceed with the contract where the fact develops that there are defects or encumbrances, the removal of which rests on mere hope and conjecture, as where, in the acquisition of title, the vendor must necessarily be wholly dependent on the will and volition of a third party." Vendor and Purchaser § 241, 77 Am.Jur.2d 414.

In this case, Hendons ability, upon complete performance by Forsythe-Tinney, to convey the nature and quality of title that had been agreed to be conveyed in the oral agreement was outside of Hendons' power because of the life estates in third parties to the oral agreement (though the third parties were original parties before the assignment clouded the title to be conveyed). In those circumstances, Forsythe-Tinney had a right to rescission.

The assignment by Elkins reserving a life estate to themselves constituted a material alteration of the oral agreement to which Forsythe-Tinney had not consented. See Lipinski v. Title Ins. Co. (Mont. 1982), 655 P.2d 970, 39 St.Rep. 2283. The legal effect of the alteration of a contract is to extinguish the right of the defaulting party to require all the executory obligations of the contract as against the party who does not consent and the party altering the contract cannot maintain an action on the contract in either its original or altered form; while the nonconsenting party loses no right and is not required to rescind or repudiate the contract as it actually is made. Smith v. Barnes (1915), 51 Mont. 202, 149 P. 963. However, Forsythe-Tinney in this case, by filing an action to recover the amounts which they had paid on the oral contract in effect asked for rescission of the contract.

In this case, Forsythe-Tinney had paid $6,377 under the oral agreement. The District Court determined that it would

allow Forsythe-Tinney credit only for the equity that the payments had purchased, and without credit for interest that Forsythe-Tinney had paid in performance. This was an improper limitation on the damages sustained by Forsythe-Tinney. If we regard the breach of Elkins and Hendons to be one of contract, the measure of damages is the amount which will compensate the party aggrieved for all the detriment that was proximately caused thereby. Section 27-1-311, MCA. If we regard the situation as a breach of an agreement to convey an estate of real property, the damages are considered to be the price paid and expenses incurred in connection with the contract. Section 27-1-314, MCA. In this case, the payments made by Forsythe-Tinney relieved to that extent, including interest, any payments that were required to be made under the Raley contract by Elkins. On breach or rescission, Forsythe-Tinney should be able to recover the monies they had paid on the contract with interest thereon from the date of the breach, § 27-1-314, MCA.

Further with respect to damages, the District Court allowed an offset against Forsythe-Tinney's interest based on the reasonable value of their occupation of the real property from the commencement of the oral agreement. However, the possession by Forsythe-Tinney was pursuant to the oral agreement between them and Elkins that each would have the right to occupy the property. On rescission, however, Forsythe-Tinney lost the right to occupy the property, and Elkins and Hendons would be entitled to an offset for the reasonable rental value of the property occupied by Forsythe-Tinney from and after the date of service of the notice to quit served upon them, on February 8, 1982.

Although the object of § 28-2-1716, MCA, requiring one rescinding a contract to make compensation or restoration, is to place the other party in status quo, absolute and literal restoration is not required, it being sufficient if restoration is such as is reasonably possible or as may be demanded by the equities of the case. O'Keefe v. Routledge (1940), 110 Mont. 138, 103 P.2d 307. It is not always true that a plaintiff remaining in possession waives his right to rescission. Rinio v. Kester (1935), 99 Mont. 1, 41 P.2d 405. Under the equities of this case, it is not necessary that Forsythe-Tinney be charged with the rental value of the property from the first date of their occupation to the time when the notice to quit was served upon them.

The additional issue raised by Forsythe-Tinney that the District Court should have awarded more money on debts owed to them is foreclosed by Rule 52(a), that such findings must be clearly erroneous.

With respect to the cross-appeal by Elkins, the finding and conclusion of the District Court that Forsythe-Tinney were entitled to exemplary damages in the sum of $1,000 for the wrongful cutting off of the sewer services is founded on evidence in the record and may not be set aside by us unless clearly erroneous. Rule 52(a), M.R.Civ.P. We do not find the court to be in error on this point. Punitive damages may be awarded without a finding of actual damages. Lipinski, supra. With respect to the award of attorney fees to Forsythe-Tinney, there exists no agreement between the parties for the payment of attorney fees. The measure and mode of compensation of attorneys is left to the agreement, express or implied, of the parties. Section 25-10-301, MCA.

No legal reason appears for the award of attorney fees to Forsythe-Tinney in this case.

Accordingly, this cause is remanded to the District Court with instructions to enter judgment thereon in favor of Forsythe-Tinney and against Elkins and Hendons in the sum of $6,377, with interest at the legal rate from and after February 8, 1982; that the court find and ascertain a reasonable rental value as an offset against said amounts owing to Forsythe-Tinney for the occupation of the premises from and after February 8, 1982; that the award of $1,000 in punitive damages to Forsythe-Tinney be affirmed, and the award of attorney fees to Forsythe-Tinney from Dan Elkins be reversed and vacated. Costs of appeal to Forsythe-Tinney.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 12 -