No. 88-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ELLIS A. BRUNNER and GLORIA A.
BRUNNER, husband and wife,

        Plaintiffs and Appellants,

   -vs-

LEO R. LaCASSE and FRIEDA LaCASSE,
husband and wife, and ED LaCASSE,

        Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard R. Buley; Tipp, Frizzell & Buley, Missoula,
        Montana

    For Respondent:

        Clinton H. Kammerer, Kammerer Law Offices, Missoula,
        Montana
        Stewart A. Pearce, II, Missoula, Montana

Submitted on Briefs: Sept. 29, 1988

Decided: October 25, 1988

FILED

Filed: '88 OCT 25 PM 2 05

CLERK
MONTANA SUPREME COURT

Ethel M. Harrison

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Steven Gross (Gross), Lyle Grenager (Grenager), Allan Davis (Davis), and Ellis and Gloria Brunner (Brunners) appeal a decision from the Fourth Judicial District, Missoula County, denying them prejudgment interest and denying the Brunners' claim for return of equity in property conveyed when the contract for deed was executed. We reverse.

This case arises from the conveyance of three twenty-acre, undeveloped, agricultural parcels from respondents to appellants Gross, Grenager and Davis in 1978. In 1979, respondents conveyed a parcel to appellant Brunners. At that time, Brunners purchased the property with persons named Wicker who subsequently conveyed their interest to Brunners in settlement of a debt. The real estate broker who put these purchases together is Ed LaCasse, the son of Leo and Frieda LaCasse.

Testimony at trial showed the reason appellants entered the transactions was to divide the parcels into four five-acre parcels and then convey them via gift theory. Using a Certificate of Survey and the gift theory laws of this state, the properties could purportedly be subdivided without going through the expense of a regular subdivision.

Unfortunately for the parties involved, the process fell apart when the county determined the five-acre sites would not sustain individual drainfields. After attempts to remedy the situation failed, appellants sought to rescind the contracts. Letters rescinding the Gross, Grenager and Davis contracts were sent in June 1981, and letters rescinding the contracts for all four appellants were sent in February, 1983. When the 1983 rescission letters failed to elicit a response, the appellants initiated suit, seeking rescission of the contracts, damages for fraud in the inducement to enter the contracts, interest and attorney's fees.

2

Integral to the rescission claim was the return to appellants of the monies and property each had conveyed to respondents as down payments and payments on the contracts. In the Brunners' case this included equity in a house which was transferred to respondents as partial payment for the parcel. This equity was valued at approximately $17,000 at trial.

The District Court after hearing the evidence presented at trial, issued findings of fact, conclusions of law and its opinion and order on January 13, 1987. The court found the plaintiffs were entitled to rescind their contracts based upon mutual mistake between the parties. The judgment dated February 9, 1987, provided for return of the amounts paid under the rescinded contracts, prejudgment interest at the contract rate for each plaintiff's contract, and the plaintiff's costs of suit. The judgment also returned $17,000 to the Brunners, an award representing the equity in the property traded to the LaCasses. Finally, the judgment awarded attorney's fees to the plaintiffs.

Defendant filed timely objections to the judgment on February 11, 1987. Following a hearing on the objections, the court filed an opinion and order on April 23, 1987, wherein the court awarded the plaintiffs their attorney's fees, but denied them prejudgment interest and denied the Brunners the equity in the traded property.

A new judgment was prepared by counsel and signed by the judge on May 7, 1987. It is from this May 7, 1987 judgment that appellants appeal. Appellants ask for attorney's fees for this appeal.

Appellants present the following issues:

1. Whether plaintiffs, having rescinded their contracts with defendants, are entitled to prejudgment interest from the defendants who have had use of the monies paid under the rescinded contracts since 1978 and 1979?

3

2. Were the purchasers (Brunners) entitled to recover the value of their equity in real property conveyed by them to the sellers as partial consideration for the rescinded contract?

Issue No. 1.

It is the general rule in this state that a party lawfully rescinding a contract is entitled "to recover the monies they paid on the contract with interest thereon from the date of the breach, § 27-1-314, MCA." Forsythe v. Elkins (Mont. 1985), 700 P.2d 596, 601, 42 St.Rep. 680, 685. Respondents contend, however, that an exception to the general rule allowing prejudgment interest exists "where the party seeking to recover the payments made on the purchase price ha[ve] enjoyed the possession of the premises . . ." Silfvast v. Asplund, et al. (1935), 99 Mont. 152, 160, 42 P.2d 452, 456. The respondents further contend the actions of appellant Davis in 1983, allowing one Dean Clinkenbeard to cut hay on the subject parcels on shares, constitutes exercising possession of the property. In denying prejudgment interest to the appellants, the District Court found exercise of dominion and control existed sufficient to deny an award of prejudgment interest. Upon review of the evidence presented and the authority cited, we find the Silfvast case has been misinterpreted and the facts do not support denial of prejudgment interest.

The Silfvast case deals with our present § 28-2-1716, MCA. The statute authorizes the court to direct the rescinding party to "make any compensation or restoration to the other which justice may require." Section 28-2-1716, MCA. This statute allows the court to balance the equities of the parties to a rescission action. It is in line with the objective of rescission that the parties be returned to their respective positions as if the contract had not been entered.

4

Respondents contend that since the District Court found appellant Davis exercised dominion and control over the properties in 1983, by allowing the cutting of the hay on the properties, the Silfvast case requires an automatic finding that appellants are not entitled to prejudgment interest.

In Silfvast, the Court states:

> We do not feel that under [§ 28-2-1716, MCA], it is incumbent upon the trial court to allow or disallow interest in accordance with the strict rules of law which would apply to ordinary transactions, but only to award compensation as justice may require . . .

Silfvast, 42 P.2d at 456. This language does not support respondents' contention that the Silfvast Court adopted the exception as law in this state. Further, the portion of Silfvast respondents cite to is an excerpt of the Court's examination of other jurisdictions on this issue.

In the more recent case of Forsythe v. Elkins (Mont. 1985), 700 P.2d 596, 601, 42 St.Rep. 680, 685, 686, this Court was again faced with interpreting § 28-2-1716, MCA, and stated:

> Although the object of § 28-2-1716, MCA, requiring one rescinding a contract to make compensation or restoration, is to place the other party in status quo, absolute and literal restoration is not required, it being sufficient if restoration is such as is reasonably possible or as may be demanded by the equities of the case. O'Keefe v. Routledge (1940), 110 Mont. 138, 103 P.2d 307.

Looking at the equities in this case we find the appellants were induced to enter these agreements on the premise they could be subdivided using a gift theory which would avoid the costly subdivision process. Some type of agreement existed in the first few years allowing the sellers to hay the properties, with the purchasers to get credit for

5

the hay removed. No credit on the purchase price appears to have been given. In 1981, after being informed the division was not possible as planned, three of the appellants attempted rescission. The fourth party, the Brunners, had signed a separate agreement to attempt to consummate the transaction, but joined with the others in sending the 1983 rescission notice. Later in 1983, appellant Davis authorized Clinkenbeard to cut hay on the properties on shares. However, the appellants' share was left baled and stacked on the property, purportedly to the time of trial. From 1984 on, by agreement the parties had cut the hay on the properties and placed the profits in escrow. Appellants received no benefit from having cut the hay on the properties. Based on the lack of a showing of any benefit to the appellants by this act, we find the court's holding denying prejudgment interest is reversible error. The holding fails to balance the equities of this case wherein appellants have been deprived of their monies for eight to nine years to the date of judgment, while respondents received or are able to receive the profits from the use of the land for nearly all the years in question. We therefore reverse the District Court's judgment regarding the award of prejudgment interest.

Issue No. 2.

In its opinion and order of April 23, 1987, the District Court declined to award the Brunners the equity in the property transferred to the respondents as partial payment. The District Court based its denial on the case of Carey v. Wallner (Mont. 1986), 725 P.2d 557, 43 St.Rep. 1706, agreeing with respondents argument that:

> [R]estoration in rescission covers only those funds actually expended, it does not cover losses, which occur incidental to the contract, those which arise out of

6

accounting procedures or speculative losses.

The Carey case on which the court and respondents relied dealt with rescission of a contract for deed involving the sale of a business. The court allowed rescission based upon mutual mistake of the parties at the time of entering the contract, similar to this case. In restoring the parties to their respective status quo, the court denied the Carey's recovery of "any loss on the discounted contract for deed which they sold." Carey, 725 P.2d at 561. The Carey case and this case are distinguishable. In Carey, the rescinding party sought recovery for a loss sustained when they sold a separate contract for deed and used the proceeds to pay off their loan obtained for converting a carport to a room. The contract for deed which was sold covered out of state property in no way related to the sellers. No benefit resulted to the sellers.

In the case at hand the buyers transferred property to the sellers as partial consideration paid upon the contract in issue. The transferred property was subject to various indebtedness which was assumed by respondents. The Brunners further agreed to pay $30,000 cash toward the purchase of the property. The contract for deed, however, does not specify a total purchase price for the parcel the Brunners purchased; the record shows only that an exchange of the Brunners' equity in the transferred parcel to the LaCasses occurred as a partial down payment. It should be noted that the amount of equity the Brunners possessed in the property when it was transferred is estimated at $17,000 according to the testimony of Ellis Brunner.

Sections 28-2-1713(2) and 28-2-1715, MCA, provide "each party must restore to the other everything of value received under the contract." Carey, 725 P.2d at 561. As the equity in the transferred property constituted partial payment on the contract, they are entitled to its return. For this

7

reason, we direct the District Court on remand to allow a hearing at which both parties may present evidence of the value of the equity at the time of the transfer.

The judgment of the District Court filed May 7, 1987, is reversed and remanded for further proceedings in conformity with this opinion. The District Court shall also award a fair attorney's fee for this appeal to the appellants.

Reversed and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices