No. 98-321

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 129

294 Mont. 478

982 P.2d 1002

BILL DeNIRO,

Plaintiff and Appellant,

v.

JAY M. GASVODA, individually,

and d/b/a GASVODA CONSTRUCTION,

Defendant and Respondent.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

No

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Stuart Bradshaw, Stevensville, Montana

For Respondent:

Howard C. Greenwood, Hamilton, Montana

Submitted on Briefs: January 21, 1999

Decided: June 8, 1999

Filed:

No

_____

Clerk


Justice James C. Nelson delivered the Opinion of the Court.


**¶1. This action was tried before the Twenty-First Judicial District Court, Ravalli County, on a claim for breach of contract. Plaintiff, Bill DeNiro, appeals from the District Court's award of a judgment to defendant, Jay M. Gasvoda. We affirm.**

## ISSUES

**¶2. 1. Did the District Court err in finding that the parties mutually agreed to a modification of the length of the road?**


**¶3. 2. Did the District Court err in finding that the parties did not contract for the construction of a roadway six inches above field grade?**


**¶4. 3. Did the District Court err in finding that the parties intended to incorporate the pre-printed provisions of the March 30, 1995 project bid into the April 21, 1995 project bid?**


## BACKGROUND


**¶5. DeNiro is the owner of a tract of agricultural property located in Ravalli County, Montana. In March 1995, DeNiro decided to build a residence on the property and began soliciting bids from local contractors for the construction of a roadway leading from an adjacent county road into the interior of the property. The roadway was to be approximately 2,500 feet in length, and its construction would require filling in an**

existing ditch located along the path of the new road.

¶6. DeNiro received bids on the project from three different contractors: Loyd Moran, Robert Lewis, and Gasvoda. Gasvoda submitted his original bid on March 30, 1995, in the amount of $19,500. DeNiro declined Gasvoda's March 30 bid because it was not competitively priced, and on April 21, 1995, Gasvoda submitted a revised bid of $17,000. DeNiro accepted Gasvoda's revised bid for the project, and construction of the roadway began in May 1995. The basis of this lawsuit is a dispute regarding the terms of the contract arising out of DeNiro's acceptance of Gasvoda's April 21 project bid.

¶7. DeNiro initiated this action by filing a complaint before the Justice Court for Ravalli County alleging Gasvoda was in breach of the contract. Gasvoda filed a counterclaim alleging DeNiro owed him an additional $3,386 over the amount paid under the contract due to a multiplication error in calculating the cost of gravel in the April 21 bid, 112 yards of extra gravel used on the road but not included in the April 21 proposal, and for additional work outside the scope of the project bid which Gasvoda had performed at DeNiro's request.

¶8. The Justice Court found for DeNiro and awarded him in excess of $5,000 in damages. Gasvoda appealed the judgment to the District Court, which tried the case *de novo* in a bench trial. The District Court found for Gasvoda and awarded him damages in the amount of $1,050 with interest plus attorney's fees and court costs according to the terms in the contract. DeNiro appeals.

## STANDARD OF REVIEW

¶9. We review findings of fact in a bench trial in a civil action to determine whether there is substantial credible evidence to support the findings of the district court. In determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Roberts v. Mission Valley Concrete Indus.*(1986), 222 Mont. 268, 271, 721 P.2d 355, 357. We review a district court's conclusions of law to determine whether those conclusions are correct. *Hollister v. Forsythe* (1995), 270 Mont. 91, 93, 889 P.2d 1205, 1206.

## DISCUSSION

¶**10.** **1. Did the District Court err in finding that the parties mutually agreed to a modification of the length of the road?**

¶**11. DeNiro contends that he and Gasvoda contracted for the construction of a roadway approximately 2,500 feet in length leading from an adjacent county road on the northern boundary of DeNiro's property to the headgate of an irrigation ditch located in the southeastern-most corner of the property. However, the roadway, as completed, reaches only as far as the point where the circular driveway surrounding the residence intersects the roadway, a point 150 feet short of the headgate.**

¶**12. Gasvoda concedes that the written contract called for construction of a roadway up to the headgate, but contends that this provision was subsequently modified by oral agreement between himself and DeNiro's ostensible agent, Doug Palmer. More particularly, Gasvoda contends that Palmer, acting on DeNiro's behalf, instructed him to lay the road only as far as the start of the residential driveway. Moreover, Gasvoda argues, even if Palmer had not been acting on DeNiro's behalf at the time these instructions were given, DeNiro acquiesced to the modification in the length of the roadway by failing to lodge an objection at any time during its construction.**

¶**13. A written agreement may be modified by an executed oral agreement. Section 28-2-1602, MCA. An oral modification to a contract is executed when both parties have fully performed.** *Lemley v. Allen* **(1983), 203 Mont. 37, 41, 659 P.2d 262, 265. Moreover, a party that acquiesces to the modification of a contract may be estopped from asserting damages arising from breach of the original contract.** *Hellickson v. Barrett Mobile Home Transp., Inc.* **(1973), 161 Mont. 455, 460-461, 507 P.2d 523, 526. Waiver may be proven by express declarations or by a course of acts and conduct so to induce the belief that the intention or purpose was to waive.** *Mathis v. Daines* **(1982), 196 Mont. 252, 258, 639 P.2d 503, 506.**

¶**14. In its Findings of Fact and Conclusions of Law, the District Court found that "DeNiro and Gasvoda did mutually agree to the location of the roadway as built and that DeNiro's claim to the contrary is not credible since it appears he made no issue of the location of the road until this litigation arose." Implicit in this finding is a determination that Gasvoda's theory of ostensible agency between DeNiro and Palmer was credible and that DeNiro waived any objection to the oral modification of the contract by failing to timely object to the modification prior to the completion**

of the project.

¶15. There is substantial credible evidence in the record before us to support the District Court's finding that DeNiro agreed to the modification of the length of the roadway. Gasvoda and Lewis both testified that they believed Palmer to be DeNiro's representative because it had been Palmer who had taken the bidders onto the subject property and described the details of the project to them. Both contractors had submitted their bids to Palmer for forwarding to DeNiro. Additionally, it was from Palmer that Gasvoda learned that DeNiro had rejected his initial bid for not being competitively priced. Under § 28-10-103, MCA, such evidence is sufficient to create a relationship of ostensible agency between Palmer and DeNiro for purposes of the roadway construction project.

¶16. In addition to evidence indicating that Palmer acted as DeNiro's agent during the course of the bidding and into the start of construction, Gasvoda testified that DeNiro had been present daily on the job site and "was standing right there" as the road was being built. DeNiro paid all of the invoices submitted by Gasvoda related to the roadway project and made no objection to the fact that the road terminated at the driveway until October 1995, when Gasvoda submitted an invoice in the amount of $1,050 for hourly work performed on the garage slab and foundation under a separate agreement.

¶17. We conclude that the District Court did not err in finding that DeNiro and Gasvoda agreed to the modification in the length of the roadway and that Gasvoda was not in breach of the contract for failing to construct the road up to the headgate.

¶18. 2. Did the District Court err in finding that the parties did not contract for the construction of a roadway six inches above field grade?

¶19. Included on the March 30 bid submitted by Gasvoda was a handwritten notation which read: "Note * Centerline of roadway (Point C to A) will be min. of 6" higher than the existing field grade." On the April 21 bid which was ultimately accepted by DeNiro, Gasvoda included the following notation: "This is revised contract price and terms from estimate dated Mar. 30 1995." DeNiro argues that the two bid proposals, when read together, show that Gasvoda agreed to the construction of a roadway six inches above field grade at its crown. Moreover, DeNiro contends,

because the existing road is level with the surrounding field grade, Gasvoda is in breach of the contract and DeNiro is entitled to damages in the amount necessary to raise the road six inches above field grade.

¶20. Gasvoda argues that the parties did not agree to the construction of a road which would be six inches above field grade at its crown. Rather, Gasvoda contends, it was the understanding of both parties that Gasvoda would construct a sub-road out of pit run gravel, which would be level with the existing grade but could later be finished with a finer gravel top coat to raise it six inches above field grade.

¶21. The District Court found that:

It is apparent from the face of the bid accepted by DeNiro that Gasvoda's calculations did not include enough pit run gravel to form a six inch crown above grade. Moreover pit run gravel is not considered suitable in the trade as the top coat of a gravel road, but rather as rough subgrade material only. The bid clearly does not contemplate use of any material for the road except pit run gravel. Finally, neither the Lewis bid or the Moral bid appear to contemplate anything other than a roughed road.

From this, the District Court concluded that "Gasvoda did not contract to raise the level of the roadway from Point C to Point A to a level of six inches above the existing grade."

¶22. Our review of the record reveals substantial credible evidence to support the findings of the District Court. Section 28-3-203, MCA, requires that several contracts relating to the same matters, between the same parties, and made as part of substantially one transaction are to be taken together for purposes of interpreting the scope of the contractual agreement between the parties. From Gasvoda's notation at the bottom of the April 21 bid, it is clear that the parties intended the April 21 bid to be read together with the March 30 bid as the basis of the contractual relationship between DeNiro and Gasvoda.

¶23. Therefore, to the extent Gasvoda's note regarding the minimum grade level of the road comprised part of the March 30 bid and was not otherwise modified by the revised terms of the April 21 bid, that provision would be included in the contract for the construction of the road. However, the testimony at trial demonstrated that Gasvoda's notation at the bottom of the March 30 bid indicated the ultimate grade

level of the finished road was not intended to be incorporated into the substantive provisions of the contract.

¶24. Gasvoda testified that at the time he initially drafted the March 30 bid, there was no mention of a grade level for the road. However, when he met with Palmer to discuss his proposed bid, Palmer expressed concern that the level of the road would be too high, making it difficult to mow or otherwise maintain the banks of the roadway. Gasvoda assured Palmer that this would not be a problem because the height of the sub-road would be level with the surrounding field and the road would not be raised above field grade until the road could be finished with a coat of finer grade gravel at a later date.

¶25. Gasvoda testified that the reason the finishing topcoat could not be added at the same time the sub-road was being laid was because the heavy trucks and other equipment needed for the construction of the residence would wear too much on a finished road. Gasvoda testified that he and Palmer discussed the possibility of putting on a finishing top coat but agreed this should not be done until construction of the residence was completed. It was during the course of this conversation that Gasvoda placed the notation in question on the bottom of the bid proposal in order to assure Palmer that the sub-road would be constructed to allow a finishing topcoat of fine grade gravel no higher than six inches above field grade.

¶26. DeNiro testified that Gasvoda's explanation regarding the purpose of the notation on the March 30 bid was not communicated to him by either Palmer or Gasvoda at the time he received the bid and that he believed both the March 30 and the April 21 bids included a provision for a sub-road six inches above field grade. Palmer did not testify at trial.

¶27. The District Court found that although both estimates contained "vague and ambiguous" project requirements, "[i]t is apparent from the face of the bid accepted by DeNiro that Gasvoda's calculations did not include enough pit run gravel to form a six inch crown above grade." The District Court also ultimately accepted Gasvoda's testimony regarding the meaning of the notation on the March 30 bid as credible and implicitly imputed to DeNiro constructive knowledge of Gasvoda's representations to Palmer regarding the height of the subgrade road.

¶28. We have already concluded that substantial credible evidence supports a

determination that Palmer acted as DeNiro's ostensible agent with regard to organizing and soliciting bids on the road construction project. Therefore, the District Court's imputation of constructive knowledge to DeNiro of the meaning of the notation on the bid was not in error. See § 28-10-604, MCA.

¶29. We further conclude that the District Court properly considered parol evidence of the circumstances under which the bid was prepared in interpreting provisions of the contract which appeared ambiguous or uncertain. See §§ 1-4-102 and 28-2-905 (2), MCA. Although the testimony offered at trial was conflicting with regard to whether the parties intended Gasvoda's notation on the minimum height of the roadway to be included as a substantive provision of the contract, or merely a clarification of the understanding between Palmer and Gasvoda, the District Court found Gasvoda's testimony on this issue to be the more credible, and it is not the function of this Court to reweigh that determination on appeal. *Duncan v. Allen*, 1998 MT 316, ¶ 11, 970 P.2d 1036, ¶ 11, 55 St.Rep. 1296, ¶ 11.

¶30. We hold that the District Court did not err in finding that the parties did not agree that Gasvoda would construct a sub-road of pit run gravel six inches above field grade.

¶31. 3. Did the District Court err in finding that the parties intended to incorporate the pre-printed provisions of the March 30, 1995 project bid into the April 21, 1995 project bid?

¶32. The District Court found that

it was the intent of the parties that the preprinted provisions of the March 30, 1995 bid be incorporated into the April 21, 1995 "project bid." Consequently, DeNiro is liable for 18% annual interest on the sum owed to Gasvoda from and after June 12, 1995, until paid, plus reasonable attorney's fees in an amount yet to be determined.

As discussed above, the revised project bid of April 21 expressly stated that it was intended as a revision of the March 30 bid, so that the scope of the contractual relationship between these parties must be determined from a reading of both instruments taken together. Although the April 21 bid clearly revised the provisions of the March 30 bid detailing the nature and cost of the work, nothing in the April 21 bid contradicted or

amended the terms of the "boilerplate" provisions included in the March 30 bid regarding terms of payment and other standardized contract provisions.

**¶33. That both parties understood these "boilerplate" provisions to have been extended by the April 21 bid is evidenced in the pleadings filed by both parties in which costs and attorney's fees are requested as part of the relief sought. We therefore affirm the finding of the District Court that the parties intended to incorporate the pre-printed provisions of the March 30, 1995 project bid into the April 21, 1995 project bid.**

**¶34. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER