Chief Justice Mike McGrath delivered the Opinion of the Court.
*32 ***383 ¶1 Trademark Woodworks, LLC, appeals from an April 3, 2018 judgment of the Fifth Judicial District Court. The District Court held that the contract between the Jorgensens and Trademark Woodworks, LLC, had been rescinded and awarded the Jorgensens damages and attorney's fees. We affirm.
¶2 We restate the issues on appeal as follows:
Issue One: Did the District Court commit clear error when it found that the agreement had been rescinded?
Issue Two: Did the District Court abuse its discretion by awarding attorney's fees to the Jorgensens?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 In September 2015, Tim and Kiri Jorgensen ("the Jorgensens") entered into a contract ("the Agreement") with Trademark Woodworks, LLC ("Trademark") for the construction of a home near Wisdom, Montana. The Agreement provided that Trademark would supply the labor and materials for the framing, roofing, and siding of the home.
¶4 Nathan Judd ("Judd"), a primary owner of Trademark and a contractor, is an acquaintance of the Jorgensens and submitted a bid on behalf of Trademark to acquire the job.
¶5 The Agreement was silent as to who would assume the role of general contractor. Both parties believed this role would fall to the Jorgensens, as Tim Jorgensen was an experienced contractor and Trademark was contracted for only specific aspects of the construction.
¶6 Early on, the relationship between Judd and the Jorgensens began to deteriorate. Judd felt that the Jorgensens were causing unnecessary delays in the project and that he was being forced to "assum[e] a role left vacant" by the Jorgensens, whom he expected would act as the general contractors on the site. The Jorgensens dispute that Judd was acting as general contractor and assert that Judd was responsible only for his subcontractors in accordance with the Agreement. The Jorgensens also maintain that Judd failed to adequately perform his obligations under the contract and charged excessively for his work.
¶7 On September 28, 2015, after a series of disagreements and miscommunications, Judd sent the Jorgensens an email: "If you feel like your [sic] being taken advantage of, mislead, or mistreated I apologize. I'll be happy to finish the framing phase and turn the reigns ***384 [sic] over if you'd like. Please let me know on how you'd like us to proceed."
¶8 In her response, Kiri inquired about Judd's on-site work schedule for the upcoming weeks and asked him to clarify exactly what he considered the "framing phase" of the job to entail. Judd responded: "The framing phase would be the erection of the structure. Myself and/or my crew will be onsite mon-Friday [sic] until the framing is complete."
¶9 On October 19, 2015, when the framing phase was near completion, the Jorgensens emailed Judd: "On September 28, after a previous round of negativity, you offered to 'finish the framing phase and turn the reigns [sic] over if you'd like.' On account of your continued actions and behavior, we have elected to take you up on this offer." They then asked Judd for a detailed accounting of the money spent and expenses paid. At this point, Judd estimated the framing was 95% finished.
¶10 Following this exchange, Trademark ceased all work and did not return to the jobsite.
¶11 The Jorgensens disagreed with Judd as to the accuracy of Trademark's final accounting. In December 2015, the Jorgensens filed their Complaint alleging breach of contract, bad faith, and, in the alternative, rescission. Trademark denied the allegations and counterclaimed alleging breach of contract and bad faith.
¶12 Following a bench trial, the District Court dismissed Trademark's counterclaims, held that the Agreement was rescinded, ordered Trademark to pay the Jorgensens $19,977.19 in restitution damages, and awarded *33 the Jorgensens $27,475 in attorney's fees. Trademark appeals.
STANDARDS OF REVIEW
¶13 A district court's findings of fact will be upheld unless they are clearly erroneous. White v. Longley , 2010 MT 254, ¶ 17, 358 Mont. 268, 244 P.3d 753. We review findings of fact in a civil bench trial to determine if they are supported by substantial credible evidence. DeNiro v. Gasvoda , 1999 MT 129, ¶ 9, 294 Mont. 478, 982 P.2d 1002. This Court must view the evidence in the light most favorable to the prevailing party. DeNiro , ¶ 9. Conclusions of law are reviewed for correctness. DeNiro , ¶ 9 ; JTL Group, Inc. v. New Outlook, LLP , 2010 MT 1, ¶ 30, 355 Mont. 1, 223 P.3d 912.
¶14 A district court's conclusion regarding the existence of legal authority to award attorney's fees is reviewed for correctness. City of Helena v. Svee , 2014 MT 311, ¶ 7, 377 Mont. 158, 339 P.3d 32. If legal ***385 authority exists, we review the district court's grant or denial of attorney's fees for an abuse of discretion. Svee , ¶ 7.
DISCUSSION
¶15 Issue One: Did the District Court commit clear error when it found that the agreement had been rescinded?
¶16 The District Court found that Trademark's September 28 email represented a valid offer to rescind the Agreement and that the Jorgensens properly accepted this offer in their October 19 response.
¶17 Trademark asserts that the email was not an offer to rescind. Rather, Trademark argues that this email was only an offer for the Jorgensens to reassume their intended role as general contractor.
¶18 "A party to a contract may rescind the contract ... if all the other parties consent." Section 28-2-1711(5), MCA ; Murphy v. Redland , 178 Mont. 296, 306, 583 P.2d 1049, 1054 (1978). "Rescission is the unmaking of a contract requiring the same concurrence of wills as that which made it, and nothing short of this will suffice." Cruse v. Clawson , 137 Mont. 439, 446, 352 P.2d 989, 993 (1960) (citation omitted). Mutual cancellation of a contract must be supported by the clear intent of the parties and the parties' conduct must be inconsistent with the existence of the contract. Cruse , 137 Mont. at 447, 352 P.2d at 994. The integral question is whether the parties intended to rescind the contract so as to place each other in the same position they were in before the contract was formed. Cruse , 137 Mont. at 447, 352 P.2d at 994.
¶19 A proposal to rescind a contract may be revoked at any time before its acceptance is communicated to the proposer, but not afterwards. Section 28-2-511, MCA. An offer to rescind is revoked if the proposer communicates to the other party that the offer is revoked before acceptance occurs, there has been a lapse of the time prescribed in the proposal for its acceptance or, if no time is prescribed, the lapse of a reasonable time without communication of the acceptance. Section 28-2-512(1), (2), MCA. Termination of a contract by mutual consent is a question of fact for the district court. Standard Ins. Co. v. Sturdevant , 173 Mont. 23, 27, 566 P.2d 52, 55 (1977).
¶20 Despite Trademark's assertion that Judd's email was merely an offer to reassume the role of general contractor, the circumstances surrounding the email suggest otherwise.
¶21 According to Judd, the Jorgensens were only occasionally at the jobsite and, because of their absence, the responsibilities of general contractor fell to Trademark. Thus, Trademark argues, Judd sent the email to relinquish Trademark's role as de facto general contractor.
***386 However, the context of Judd's email is more consistent with an offer to rescind: Judd expressed his regret for the situation, explained that he was losing money on the project, and apologized for any ill will.
¶22 Additionally, Judd's response email and Trademark's conduct following the exchange demonstrate that Judd was offering to terminate their contractual relationship. When asked what Judd meant by the "framing phase," Judd responded: "The framing phase would be the erection of the structure.
*34 Myself and/or the crew will be onsite mon-Friday [sic] until the framing is complete." If Trademark intended to continue building pursuant to the contract it would be untenable to then state it would leave as soon as framing was complete-when a substantial portion of construction on the home remained. Further, Trademark's full accounting after the acceptance did not include work done as general contractor. The accounting only documented work done pursuant to the Agreement. When Trademark offered to turn over the reins to the Jorgensens, it was a clear offer to rescind the Agreement.
¶23 The Jorgensens also interpreted Judd's email as an offer to rescind the Agreement. They found this offer "attractive" considering the turbulent relationship that had developed. Accordingly, when they accepted the offer on October 19, they believed that the Agreement would be rescinded.
¶24 The Jorgensen's acceptance was also timely. Trademark asserts that even if the September 28 email was an offer to rescind, that offer would have lapsed considering that Trademark commenced window and roof installation without objection from the Jorgensens. According to Trademark, the fact that Trademark commenced construction apart from framing indicates that the parties did not agree to rescission. We agree with the District Court that additional work completed outside of the framing should not be considered a revocation of the offer to rescind because it was originally mentioned that other work would go forward unless the Jorgensens accepted the offer to rescind. The Jorgensens compensated Trademark for this additional work and accepted the offer as it was presented in Trademark's September 28 email.
¶25 Trademark also emphasizes the fact that the Jorgensens did not accept the offer until three weeks after it was presented. The Jorgensens testified that they were holding out hope that their relationship with Trademark would improve and only accepted the offer when they realized that this was unlikely.
¶26 The timing of the acceptance was reasonable because it occurred when the framing phase was near completion and before Trademark ***387 revoked the offer.
¶27 When viewed in the light most favorable to the Jorgensens, the record supports the District Court's finding that the Jorgensens and Trademark mutually agreed to rescind the Agreement.
¶28 Trademark next asserts that the District Court's finding of rescission was improper because neither Trademark nor the Jorgensens attempted to restore one another to their pre-contract positions and because it was impossible for the parties to be restored to their pre-contract positions.
¶29 Mutual rescission of a contract can occur at any stage of performance. Small v. Coca-Cola Bottling Co ., 134 Mont. 168, 173, 328 P.2d 124, 127 (1958). It is well settled that rescission of a contract entitles each of the parties to be restored to the condition they were in before the contract was made, so far as that is possible. Cruse , 137 Mont. at 447, 352 P.2d at 994. "On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation or restoration to the other which justice may require." Section 28-2-1716, MCA. While it may be impossible to fully restore the parties to their pre-contract position given the work that was completed, we agree with the District Court that, following rescission, the Jorgensens and Trademark worked to restore one another to the status quo.
¶30 After the Jorgensens accepted Trademark's offer to rescind they requested a full accounting for the work Trademark had completed. Trademark promptly quit working on the home and advised its subcontractors that the Agreement had been terminated. Trademark then provided the Jorgensens with an accounting. The only reason the parties were not immediately restored to their pre-contract positions at that time is because they disputed whose accounting was accurate. Their conduct illustrates clear attempts towards restoration.
¶31 Trademark claims that rescission is improper because it is impossible to fully restore each party to their pre-contract *35 position. Specifically, Trademark argues that the District Court's calculation of damages does not account for Trademark's "intellectual capital," such as Trademark's expertise and connections with the subcontractors, and the Jorgensens therefore received a windfall.
¶32 Section 28-2-1716, MCA, does not require the District Court to make "absolute and literal restoration." Brunner v. LaCasse , 234 Mont. 368, 371, 763 P.2d 662, 664 (1988). Rather, the object of § 28-2-1716, MCA, is to "place the other party in status quo." Brunner , 234 Mont. at 371, 763 P.2d at 664. In other words, following rescission, the parties should not be left in a worse position than they were in when ***388 the contract was executed. Scott v. Hjelm , 188 Mont. 375, 380, 613 P.2d 1385, 1388 (1980). All that the statute requires is that restoration is "reasonably possible or as may be demanded by the equities of the case." Brunner , 234 Mont. at 371, 763 P.2d at 664.
¶33 The District Court balanced the equities of each party's position and awarded restoration damages to the Jorgensens. Trademark was compensated for the labor and materials it provided and the Jorgensens received a credit for the labor and materials they were owed. Because the District Court reached the $19,977.19 award after conducting a detailed analysis of each party's accounting, and literal restoration is not required by § 28-2-1716, MCA, the award is not clearly erroneous.
¶34 Issue Two: Did the District Court abuse its discretion by awarding attorney's fees to the Jorgensens?
¶35 Trademark argues that if the District Court's finding of rescission is correct, an award of attorney's fees is proper only if one party has materially failed to perform its contractual obligations. Because the District Court did not find that Trademark materially failed to perform, Trademark argues that attorney's fees are improper. Trademark relies on this Court's holding in Norwood v. Service Distrib., Inc ., 2000 MT 4, ¶ 56, 297 Mont. 473, 994 P.2d 25 : "We therefore hold that when a contract is rescinded due to the material failure of performance by one party, the prevailing party may be awarded attorney's fees pursuant to an express provision in the contract."
¶36 Trademark's interpretation of Norwood 's holding is too narrow. This Court found the following language of the Nevada Supreme Court to be persuasive:
When parties enter into a contract and litigation later ensues over that contract, attorney's fees may be recovered under a prevailing-party attorney's fee provision contained therein even though the contract is rescinded or held to be unenforceable. The legal fictions which accompany a judgment of rescission do not change the fact that a contract did exist. It would be unjust to preclude the prevailing party to the dispute over the contract which led to its rescission from recovering the very attorney's fees which were contemplated by that contract.
Mackintosh v. California Fed. Sav. & Loan Ass'n , 113 Nev. 393, 406, 935 P.2d 1154, 1162 (1997) (citation omitted); Norwood , ¶ 56. Our reliance on Mackintosh does not limit attorney's fees to instances where one party failed to materially perform its contractual obligations. The District Court had legal authority to impose attorney's ***389 fees pursuant to Norwood .
¶37 The Agreement provided:
I, the signer, Customer, and client understand that I will be responsible for all collection costs, including but not limited to, the principal amount, interest, Contractor's attorney fees and court costs.
Pursuant to § 28-3-704(1), MCA, this contractual right to attorney's fees is reciprocal. As the prevailing party, the Jorgensens are contractually entitled to attorney's fees and the District Court's award of $24,475 did not amount to an abuse of discretion. See Carey v. Wallner , 223 Mont. 260, 267, 725 P.2d 557, 562 (1986).
CONCLUSION
¶38 The District Court's finding that the Jorgensens and Trademark mutually agreed to rescind the Agreement was not clearly erroneous and its award of attorney's fees to *36 the Jorgensens did not amount to an abuse of discretion.
¶39 Affirmed.
We Concur:
LAURIE McKINNON, J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.